## Overseers of Lewisburg *against* Overseers of Augusta.

A devise to A upon condition that he becomes a'sober man, if the devisee does not comply with the condition, will not vest in him such an estate as will make him chargeable as a pauper upon the township where the land devised is situate.

A collector of taxes is a public officer to whose official acts credit should be given; his duplicate and an entry made therein by him of the payment of a tax, is good evidence of the fact of payment, independent of the oath of the collector himself.

CERTIORARI to the Quarter Sessions of *Northumberland* county.

The overseers of the poor of Lewisburg against the overseers of the poor of Augusta township, Northumberland county. This case involved the question whether George Conrad had a legal settlement in Augusta township, by reason of a devise to him of a tract of land in that township, or whether his settlement was in Lewisburg, by reason of the payment of taxes there. All the facts are fully stated in the opinion of the court.

*Linn* and *Miller*, for appellants, argued that by the devise to George Conrad, he became seised of the land, and by the 9th section of the Act of 13th of June 1836, became chargeable upon Augusta township. That he was seised, they cited 2 *Jacob's Law Dic.* 288; 2 *Wm. Blac.* 938; 1 *Burr. Set. Cases* 307; 3 *Burn's Jus.* 551.

*Donnell*, for appellee, whom the court declined to hear.

The opinion of the Court was delivered by

KENNEDY, J.—This proceeding was commenced originally by the overseers of Augusta township before two justices of the peace, against the overseers of the poor of the borough of Lewisburg, for the purpose of having George Conrad, a pauper, removed from Augusta township, where he had become chargeable, to the borough of Lewisburg, as the last place wherein he had acquired a legal settlement. The justices of the peace, after hearing the evidence and the parties, being of opinion that the pauper was last legally settled in the borough of Lewisburg, accordingly made an order for his removal to that place. From this order the overseers of the poor of the borough of Lewisburg appealed to the Court of Quarter Sessions of Northumberland

II. — 9                F *

county, where upon a hearing of the case, the order of the justices of the peace was affirmed. From this decision of the Quarter Sessions, the cause has been brought into this court by an appeal taken again on the part of the overseers of the borough of Lewisburg. The overseers of Augusta township claim that the pauper acquired a right to a legal settlement in the borough of Lewisburg, by his having been charged with, and having paid his share towards the public taxes or levies for the poor of said borough, for the years 1831 and 1832, under the provision contained in the 16th section of the Act of the 5th of March 1828, which declares *inter alia,* that " if any person shall be charged with, and pay his or her share towards the public taxes or levies for the poor of the said city, district, or township, for two years successively, he shall be adjudged and deemed to gain a legal settlement in the said city, district, or township." This claim is resisted on the part of the borough of Lewisburg, first, on the ground that competent and sufficient evidence has not been given to establish that such taxes or levies were charged against and paid by the pauper; and secondly, if the evidence should be considered competent and sufficient to prove these facts, that the evidence adduced on their part, shows that the pauper subsequently obtained a legal settlement in Augusta township, by having become seised of a freehold estate therein, and having dwelled upon the same for one whole year, in conformity to the 4th clause of the 9th section of the Act of 13th of June 1836, which enacts that a settlement may be gained in any district, " by any person who shall have become seised of any freehold estate within such district, and who shall dwell upon the same for one whole year." This latter ground may be noticed first, because if sustained by the evidence of the appellants, the appellees must support the pauper, as it would thence appear that he had gained his last settlement within their district. To support this latter ground of defence, the appellants rely on the last will of Peter Conrad, the father of the pauper, to show that by it the pauper in 1837 became seised of a freehold estate in sixty acres of land, lying within Augusta township, which the testator devised in the following words, to wit: " To my son George Conrad, I give and devise sixty acres of land in Augusta township, adjoining the sixty acre tract of land I devised to my son John Conrad, M'Clay's land, and others, to hold to him, his heirs and assigns for ever; upon condition, however, that the said George, after my decease, becomes a perfectly sober man, and abstains from the use of all intoxicating liquors, of which my executors hereinafter named are to judge. And provided the said George do not become a sober man, and abstain from the use of liquors as aforesaid, then and in that case, it is my will that the said tract of land descend to the wife and children of the said George, in equal shares, in fee-simple." It is very plain from the terms of the devise, that at the time of making the will, George

was addicted to the excessive use of strong liquors, and that he was only to have the land therein mentioned, upon condition that he became a sober man, and abstained from all further use of such liquors. It is also clear that the condition here mentioned, is a condition precedent, and that the testator did not intend that any estate in the land should vest in George, until he complied first with the condition. That such was the intention of the testator is made manifest beyond all possible doubt, for in the event of George's failing to comply with the condition, he has given the land over to the wife and children of George in fee, to hold the same as tenants in common. And the executors of the will were thereby appointed to judge of George's having become a sober man, so as to entitle him to claim the estate mentioned in the devise. But according to their evidence, as well as the evidence of other witnesses in the case, it is only too clear that George never has complied with the condition: indeed it would seem as if he had never even tried to do so; though he has had all the time, and a great deal more than could be asked, for such purpose. But according to the Act of Assembly, it is not only requisite that he should have become seised of a freehold estate in the land, in order to gain a legal settlement, but that he should also have *dwelt* upon it for one whole year. Now there is no evidence whatever, going to show that he has ever dwelt or resided upon the land at any time. It does not even appear that there is such a thing as a dwelling-house upon it. The most that has been shown of his connexion with the land is, that before, and at the time of his father's death, he had, by the permission of the father, been in the receipt of at least some portion of the profits of the land, and that after the father's death, he continued in the receipt thereof for some time; so that the appellants have failed entirely to establish the second ground of their defence against receiving and providing a support for the pauper. It therefore becomes necessary to consider whether it has been proved by competent testimony, that George Conrad was charged with, and paid his share towards the public taxes, or levies for the poor of the borough of Lewisburg, for the two successive years of 1831 and 1832. John Rebor, the first witness on the part of the appellees, testified that he was collector of the borough of Lewisburg in the year 1832, of county tax: also produced his duplicate, showing that George Conrad was charged with thirteen cents county tax, and six cents state tax; that witness was satisfied that these taxes were paid, as they were marked like all the rest that were paid. William Wallace, another witness on behalf of the appellees, testified that he was collector of county taxes in the borough of Lewisburg, for the years 1831 and 1833. He also produced his duplicates, which were read in evidence to the court below, showing that George Conrad was charged with a county tax for each of these years. The witness further testified that these taxes

were marked paid, and as he believed, in his own hand-writing; that he had no reason to believe that George did not pay them; that he had no recollection of the payment without looking at the duplicates; that the only reason he had for believing that George paid them, was because they were so marked; that if his duplicates had been lost, he could not have testified that the taxes charged to George for the years 1831 and 1833, respectively, were paid; but he had no reason to believe but what George Conrad paid them. The testimony of these witnesses stands uncontradicted, and without anything whatever going to impugn it in the slightest degree. But it is objected that the duplicates produced and read in evidence, were not the best evidence of the taxes mentioned in them having been charged. And again, that the evidence of the taxes therein charged, having been paid by George Conrad, was insufficient, because the witnesses could not recollect the fact distinctly, of their having been paid by him; so that if paid at all, it might have been done voluntarily by some other person; possibly for a fraudulent purpose. In support of the first objection, it is alleged that the original assessments, which are filed in the office of the commissioners of Union county, or certified copies thereof, would have been better evidence of the taxes having been charged against the pauper, than the duplicates; and therefore they ought to have been produced. But what are the duplicates? They are in fact certified copies of the assessments, with warrants annexed thereto, from the commissioners of the county, certified under their hands and seal of office, and directed to the collectors respectively therein named, authorizing them to proceed and collect the taxes therein specified. But these duplicates, although in point of fact, they are transcripts of the assessments remaining in the commissioners' office, yet, *ex vi termini*, they may be regarded here as importing something more than mere copies, something of the same kind, equal in every respect and consequently equal in verity to their protocols. But at all events, the duplicates being made out and certified by the commissioners, under their hands and common or the county seal, would seem to be evidence of as high a nature, and quite as veritable as copies of the assessments certified by their clerk under the county seal, which are expressly made good evidence by the 22d section of the Act of the 15th of April 1834. *Stroud's Purd.* (1841) 196. The evidence then being competent, and also plenary to establish the fact that George Conrad was charged with public taxes, not only for two, but three years successively, while a resident in the borough of Lewisburg, brings us to the consideration of the next objection; that the testimony is insufficient to prove the payment of these taxes. The witnesses adduced for this purpose, it must be observed, were the collectors themselves, with their respective duplicates and warrants in their hands, by which they were authorized and required to collect these taxes.

[Overseers of Lewisburg v. Overseers of Augusta.]

They say that these taxes for the years 1831, 1832 and 1833, were paid, because they are marked as paid on their duplicates; that they do not recollect the fact of their having been paid, but have no doubt that it was so, for they are marked as paid by themselves; and that they would not have done this if the fact had been otherwise. Neither can they recollect that these taxes were paid by George Conrad himself, but they have no reason to believe that they were paid by any other person. Now it must be recollected that the collector of taxes is a public officer specially appointed, and clothed with the public authority for that purpose. A registry therefore made by him in writing, of his having performed certain duties as such, is not to be looked upon merely as a memorandum or registry made by a private individual of his transactions; but as an official act, to which some degree of faith and credit at least, is to be given, on account of the public confidence reposed in him for his integrity and truth, which is evidenced by his appointment to the office. Hence I am inclined to believe that the production of the duplicate and warrant, with a return or mark made on it by the collector that the tax has been paid, with proof that such return or mark was in his hand-writing, would be sufficient to prove that the tax was paid, without calling the collector himself for that purpose: this is frequently done in the case of a sheriff, where he has returned money made on a writ of *fieri facias;* and why should it not be so in the case of a collector of the public taxes? In principle there is no distinction between the two cases. And in every such case it is not only evidence that the money has been paid, but evidence likewise, that it was paid by the party charged and bound to pay it. Great public inconvenience would inevitably arise, if no evidence could be given of their official acts, except by calling them forward to testify to the fact, and then not to be permitted to give evidence of it unless they have a distinct recollection of it.

Decree affirmed.