## Spyker, Appellant, v. Wible.

*Public officers—County treasurer—Accounts—Jurisdiction of county auditors—Act of April 15, 1834, P. L. 537.*

1. Where a county treasurer assumed office on the first Monday of January, 1906, and died on August 2, 1907, and he is succeeded by his son, and thereafter in 1910, the son claimed a certain amount due the treasurer by reason of overdrafts against him in the year 1906, the son is not entitled to recover from the county, because, first, if anything is due from the county, it is due to the father and not to the son; and, second, the treasurer is concluded by the auditor's report made in the year 1907, settling the accounts of the county treasurer for the year 1906.

2. The jurisdiction of the board of county auditors is limited to an adjustment and settlement of an officer's accounts for the preceding year. The board has no authority to re-open the accounts for years prior to the preceding year, and re-audit and re-adjust them.

Argued April 17, 1912. Appeal No. 35, Jan. T., 1912, by plaintiff, from judgment of C. P. Huntingdon Co., Dec. T., 1910, No. 4, on verdict for defendant in case of Ella B. Spyker, Executrix of the Will of G. N. Spyker, deceased, v. E. R. Wible, W. L. Johnston and J. K. Wiley, Commissioners of Huntingdon county. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Issue on appeal from report of county auditors. Before WOODS, P. J.

The opinion of the Supreme Court states the case.

Verdict and judgment for defendant by direction of the court.

*Error assigned* was in giving binding directions for defendant.

*Thomas F. Bailey,* for appellant.

*R. A. Orbison,* for appellees.

OPINION BY MR. JUSTICE MESTREZAT, May 6, 1912:

In November, 1905, A. W. Spyker was elected treasurer of Huntingdon county for a term of three years, and assumed the duties of his office on the first Monday of January, 1906. Spyker died on August 2, 1907, and his son, G. N. Spyker, the appellant, was appointed as county treasurer to succeed him. In June and July, 1906, there was no money in the county treasury with which to pay the county's current indebtedness, and the commissioners made an arrangement with the Standing Stone National Bank of Huntingdon by which the county treasurer was permitted to overdraw his account. From June 1 to July 6, 1906, under this arrangement, the overdrafts of the county treasurer, as claimed by the appellant, amounted to $5,769.84. In the appellant's history of the case it is stated "that at the meeting of the auditors of Huntingdon county to audit the accounts between the treasurer and the commissioners for the year 1906 it was impossible to detect any discrepancy arising from the overdraft in the Standing Stone National Bank as made by the county treasurer." The appellant, alleging that the balance against the accountant found by the county auditors who settled the accounts for 1907 was erroneous and excessive, presented a petition to the Common Pleas of Huntingdon County and obtained a rule upon the county commissioners to show cause why they should not issue an order for $3,187.56 to G. N. Spyker, county treasurer, "so as to properly adjust the accounts between the said county commissioner's office and the county treasurer's office." The court made the rule absolute, and directed the commissioners to issue an order to the county treasurer for the amount claimed to be due in the petition, which was done and Spyker received the money. Subsequently the appellant alleged that there was still a further sum due him on the overdraft. Although not dis-

tinctly averred it is clearly inferable from the appellant's history of the case that the treasurer presented this additional claim for allowance to the auditors at their meeting to settle the accounts for the year 1909. At all events, it appears that the auditors refused to allow the claim, and their report having been filed the treasurer took an appeal to the common pleas. The court framed an issue in which G. N. Spyker was plaintiff and the commissioners of Huntingdon county were defendants to determine "whether or not the said G. N. Spyker, county treasurer, is entitled to a credit of $2,582.18, claimed by him before the said auditors and disallowed by them, which credit appellant alleges began to accrue in his favor on or about the first day of February, 1906, and which credit he alleges existed in his favor on the 3d day of January, 1910." G. N. Spyker, the plaintiff in the issue having died, his executrix was substituted as plaintiff. On the trial of the cause the court directed a verdict for the defendant. The plaintiff has taken this appeal.

The statement of the undisputed facts shows that the learned court was clearly right in directing a verdict for the defendants for at least two reasons. If there was anything due from the county on the overdrafts it belonged to A. W. Spyker and not to G. N. Spyker, who succeeded him as county treasurer. The overdrafts were made, as conceded, from June 1 to July 6, 1906. During that time A. W. Spyker was the treasurer of Huntingdon county and as such disbursed the funds of the county on orders drawn by the county commissioners. He did not die until August 2, 1907, more than a year after the date of the alleged overdrafts. It is, therefore, apparent that if the county was in debt by reason of the alleged overdrafts it was to A. W. Spyker and not to G. N. Spyker, the former's successor in the office of county treasurer.

From appellant's history of the case, it appears that the auditors of Huntingdon county audited the ac-

counts of the treasurer for the year 1906 at which the
county treasurer was represented.  At all events, it will
be assumed that the county auditors did what the statute
required and settled the accounts of the county officers
for that year: Schuylkill County v. Boyer, 125 Pa. 226.
It must, therefore, be assumed that the accounts of A.
W. Spyker and G. N. Spyker as county treasurers for
the year 1906 were settled and adjusted by the county
auditors at their annual meeting in January, 1907.
The report of the auditors filed in the common pleas
fixed the amount due from or to both A. W. Spyker and
G. N. Spyker.  The statute provides that from the time
the report was filed it had the effect of a judgment
against the officer for the amount found by the auditors
to be due the county.  From that judgment the county
or the officer could appeal within sixty days after the
filing of the report.  If no appeal was taken, the judg-
ment became final.  Thereafter the auditors had no
power over it, and the officer was bound by the settle-
ment.  Neither the accounts of the officer for the year
1906 nor the judgment entered on the report of the audi-
tors could, after the expiration of sixty days, be reviewed
by the Common Pleas or any other tribunal.  All par-
ties were concluded by the judgment unless appealed
from.  The Act of April 15, 1834, P. L. 537, creates a
board of county auditors as a special tribunal, and
confers upon it the authority to adjust and settle the
accounts of the treasurer and other county officers.  The
board possesses all necessary power to bring the parties
and witnesses before it, to adjust and settle the ac-
counts, to determine the balance due, if any, and to en-
force its collection.  If either party is dissatisfied with
the result of the audit, he can, within the statutory
limit, appeal to the Common Pleas where, on an issue
framed for the purpose, he may have the cause tried by
a jury.  The rights of all parties are amply protected.
The jurisdiction of the tribunal, however, is exclusive
and the officer cannot in the first instance have his ac-

counts settled and adjusted by the court. This we have held in many cases.

Section 47 of the Act of April 15, 1834, P. L. 537, requires the county auditors to assemble on the first Monday of January in each year and audit, settle, and adjust the accounts of the treasurer and other county officers, and make report thereof to the Court of Common Pleas, together with a statement of the balance due from or to the officer. It is, therefore, apparent that the jurisdiction of the county auditors is limited to an examination and settlement of the accounts of the officers for the year immediately preceding their meeting. They have no authority to adjust the accounts of an officer for any prior year or years, or to reopen the settlement of an account made for any prior year and readjust the account. The manifest intention of the statute is that the accounts of each year shall be settled by the auditors at the close of the year, and that such settlement should become final and conclusive upon the parties unless an appeal to the Common Pleas was taken in accordance with the provisions of the act. Mr. Justice WOODWARD, delivering the opinion in Northampton County v. Yohe, 24 Pa. 305, 307, says, inter alia: "The board (of county auditors) is to audit the accounts of officers for the year immediately preceding. This is the extent of their jurisdiction as defined by law, and no agreements of the commissioners can enlarge it. If the annual board may reopen the accounts of two years past, they may on the same principle go back twenty, and the next board may upset *their* doings, and thus interminable confusion be introduced in place of the statutory system." We have uniformly put this interpretation upon the statute, and held that the jurisdiction of the board of county auditors is limited to an adjustment and settlement of the officers' accounts for the preceding year.

The appeal in the present case was taken on March 18, 1910, from the report of the board of county audit-

ors which had settled the accounts of the county treasurer for the year 1909. The authority of that board was limited to an adjudication of the accounts of the officers for the year 1909, and the board had no power to reopen and readjust the accounts for the year 1906. As above pointed out, the errors or mistakes, if any, arose out of the overdrafts for the six weeks immediately succeeding June 1, 1906, and they should have been, and presumably were, corrected by the auditors who met in January, 1907, and settled the accounts for the year 1906. Failing to have those errors adjusted by that board, or on an appeal to the Common Pleas from its report, the officer was thereafter concluded, and no subsequent board of auditors had the authority to reopen the accounts for the year 1906 and reaudit and adjust them. The Act of 1834, creating the board of county auditors, conferred no such power, and hence it did not exist in any subsequent board of auditors. It follows, therefore, that the court should have directed a nonsuit for the additional reason that the board of county auditors, sitting to adjust the treasurer's accounts for the year 1909, had no power to audit and settle the appellant's claim, and hence the court of Common Pleas, on appeal, was likewise without authority to adjudicate the claim.

The judgment is affirmed.